**BRADLEY/GROMBACHER LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Dr., Suite 240
Westlake Village, California 91361
Telephone: (805) 212-5124
Facsimile: (805) 270-7589
Email: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com

Attorneys for Plaintiff IFONIA GELIN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IFONIA GELIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHUBBY SNACKS, INC., a Delaware company<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>1. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200,** *et seq.*<br>2. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17500,** *et seq.*<br>3. *VIOLATION OF CALIFORNIA CIVIL CODE § 1750. et seq.*<br>4. **UNJUST ENRICHMENT**<br>5. **BREACH OF EXPRESS WARRANTY**<br>6. **BREACH OF IMPLIED WARRANTY**<br>7. **VIOLATION OF CONSUMER FRAUD LAWS**<br>8. **NEGLIGENT MISREPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |

-1-
CLASS ACTION COMPLAINT

Plaintiff IFONIA GELIN ("Plaintiff") alleges the following based upon personal knowledge as to herself and their own acts, and upon information and belief and the investigation by Plaintiffs' counsel which included, among other things, a review of public documents, marketing materials, independent third-party laboratory testing of Chubby Snacks products, and announcements made by Chubby Snacks Inc. ("Defendant" or "Chubby") as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. Described as "a premium yet practical choice for nostalgic, health-conscious consumers on the go," Chubby Snacks are frozen, crustless sandwiches featuring organic wheat bread filled with peanut butter or almond butter and specialty jams ("Product(s)" ).[1]

2. With wellness on the rise, the self-proclaimed "health-conscious" founders of Chubby Snacks started their company with a vision to "build the future of whole food snacks for children and adults alike."[2]

3. As Dillon Ceglio, Founder and CEO of Chubby Snacks, explains, the company was founded on a "lofty vision to re-imagine traditional, sugar filled snacks."[3]

4. Since its release in 2020, the company has unabashedly targeted "health-conscious shopping moms."[4]

5. Yet the company recently admitted that they have moved afield from the "lofty vision" upon which the company was founded and have increased the sugar in the Products. "People will tell you all day long that they don't like sugar, but at the end of the day people love sugar and taste is ultimately king. We knew we didn't want to compete against Uncrustables in

---

[1] https://www.bakingbusiness.com/articles/56482-chubby-snacks-to-take-on-uncrustables
[2] https://www.prnewswire.com/news-releases/chubby-snacks-announces-launch-of-new-shape-and-flavors-301222682.html
[3] https://www.prnewswire.com/news-releases/chubby-snacks-announces-launch-of-new-shape-and-flavors-301222682.html
[4] https://www.forbes.com/sites/douglasyu/2022/09/26/threatened-by-smucker-and-facility-closure-chubby-snacks-amasses-325-million-to-launch-superfood-peanut-butter-and-jelly-sandwich-nationwide/?sh=6af4882e4614

terms of what they're doing and what they're putting in products, but we knew that we were already better in terms of our better-for-you ingredients. We just ultimately wanted to bridge the gap in order to scale into conventional as well as natural grocers and to be able to provide a product that was healthy but also had really good taste. Because at the end of the day we are going to be competing against Smucker's not only from a price perspective but also from a taste perspective."[5]

6.    While the company can certainly formulate the Products as they choose, they cannot do so in a false or deceptive manner.  Here, throughout the Class Period, the nutritional panel on the back of the Products did not accurately reflect the sugar content of each of the Products.

7.    Instead, the nutrition panel included on Defendant's packaging during the Class Period grossly undervalues the amount of sugar that is in the Products.  For example, while the Product packaging represents that the peanut butter and grape Product contains 3 grams of sugar, independent third-party testing of the Product revealed that that the sandwiches actually contain as much as 6.53 grams of sugar for that Product.  Similarly, while the packaging of the peanut butter and strawberry Product represents that the Product contains 2 g of sugar, industry standard testing has revealed the actual content far exceeds this amount at 5.3g per sandwich.

8.    Chubby understands that accurate Product information and nutrition labels are important to its "health-conscious consumers" and understands the effect marketing can have to influence consumer behavior. [6]  Prior to launching Chubby, Ceglio operated a digital marketing agency, focusing on consumer packaged goods and e-commerce brands.[7] As Ceglio explained, "[s]imply put, we just wanted to be loud and memorable and ultimately be able to win a consumer based on what we were putting in the product. The idea is you walk down the aisle, you see our

---

[5] https://www.foodbusinessnews.net/articles/21353-disrupting-uncrustables
[6] https://www.bakingbusiness.com/articles/56482-chubby-snacks-to-take-on-uncrustables
[7] *Id.*

branding and see our name, and it stops you in your tracks, and you question, 'What is that?' You can have fun with the brand, but then you flip the package over and realize, 'Wow, this is a great product. I'm either going to eat it or feed this to my kids.[8]'"

9.      The labels use color palates and imagery that appeals to children while also underscoring the purported "low sugar" and "health" benefits of the products to target health-conscious consumers. Chubby declares on its website that the Products provide the "taste that we all know to love while reinforcing strong macros,[9]" specifically promising "low-sugar, high protein, high fiber."[10]

10.      When purchasing the Products, Plaintiff relied on Defendant's misrepresentations regarding the sugar content of the Products. Plaintiff would not have purchased the Product if they had known that Defendant's representations were false and misleading. Plaintiff and the Classes paid a premium for Defendant's Products over competitor products based upon Defendant's false and misleading labeling and advertising. Defendant's Products are consistently more expensive per sandwich than the Products' snack competitors, like Smuckers Uncrustables. Plaintiff would not have purchased Defendant's Products, or would not have paid as much for the Products, had she known the truth. Plaintiff suffered an injury by purchasing the Product at inflated prices. Plaintiff also was harmed in that she did not receive the Products with "strong macros" and "low-sugar"[11] that she bargained for.

11.      Defendant's conduct of falsely marketing, advertising, labeling, and selling Chubby Products as a healthy snack and as having fewer grams of sugar than the Products actually contain constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the

---

[8] *Id.*

[9] "Macros" is commonly used as shorthand for "macronutrients, a term used to describe the nutrients your body needs." https://www.cedars-sinai.org/blog/what-are-macronutrients.html#:~:text=What%20are%20macronutrients%3F,specifically%20carbohydrates%2C%20fat%20and%20protein

[10] https://www.chubbysnacks.co/pages/frequently-asked-questions

[11] *Id.*

public; and is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, because, among other things, it misrepresents the characteristics of goods and services.

12.     As such, Plaintiff seek relief in this action individually, and on behalf of all purchasers of Chubby Products, for Defendant's violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, et seq., for breach of express and implied warranties, negligent misrepresentation, fraud, and unjust enrichment.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.     The Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965(b), (d). This Court has personal jurisdiction over the parties because Plaintiff submit to the jurisdiction of the Court and because Defendant systematically and continually conduct business throughout the State of California, including marketing, advertising, and sales directed to California residents.

15.     Defendant regularly conducts business in Napa County, because Plaintiff lives in Napa, and because the conduct alleged herein which gives rise to the claims asserted occurred within Napa County. Specifically, Plaintiff purchased the subject product at stores in Napa County.

16.     Defendant has distributed, marketed, advertised, labeled, and sold the Products in this District. Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendant is deemed to reside in this District. As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendant is deemed to reside in this District and under 28 U.S.C. §1391(b)(2), because Defendant conduct business in this District and a substantial part of the acts or omissions giving

rise to the claims set forth herein occurred in this District.

**INTRADISTRICT ASSIGNMENT (NORTHERN DISTRICT CIVIL LOCAL RULE 3-2)**

17.     This action is properly assigned to the San Francisco Division of this District pursuant to Northern District of California, Civil Local Rule 3-2 because a substantial part of the events or omissions giving rise to Plaintiff's claims arose in the counties of counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo or Sonoma. Defendant conducts substantial business in these counties served by this Division. Defendant implemented its fraudulent marketing scheme (through e.g. marketing, advertising, selling and/or leasing automobiles) in this district, as well as nationwide, through providers and sales representatives who reside or transact business in this district, and thereby affecting Class Members who similarly reside or transact business in this district. Additionally, multidistrict litigation involving the similar claims of consumers who purchased the Product was assigned to the San Francisco Division of this district.

## PARTIES

18.     Plaintiff GELIN is a citizen of California and an individual consumer. During the Class Period, Plaintiff GELIN purchased Peanut Butter, Strawberry and Grape Jelly Products at a grocery store such as Whole Foods in or around Napa California. Plaintiff GELIN has purchased 2-3 boxes of Chubby Products per month since 2022. On average, the Product had a represented sugar content of 6 grams per serving.

19.     Prior to purchasing the Products, Plaintiff GELIN read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy snack with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant. Plaintiff GELIN does not know if Defendant has remedied the issues resulting in the deceptive practices and thus considers purchasing additional Products. As such, Plaintiff GELIN still faces potential injury from Defendant's deceptive practices.

20.     Defendant Chubby LLC is a Delaware limited liability company. Its principal

CLASS ACTION COMPLAINT

place of business is 12130 Millennium Dr. Ste. 300, Los Angeles, CA 90094. According to Chubby LLC's website, the subject Product snacks were manufactured and packaged in California, during the Class Period.

## ALLEGATIONS OF FACT

## SUGAR IS HIGHLY ADDICTIVE

21.    Sugar is extremely addictive.  There is a direct link between the amount of sugar consumed and the number of dopamine receptors that are activated in the brain.[12]

22.    In a classic animal study, researchers showed that lab rats preferred sugar and artificial sweeteners over cocaine.[13]

23.    One study looked at the differences in how rats responded to Oreo Cookies versus cocaine or morphine.  It found that the Oreo cookies had a stronger effect on activating certain parts of the brain that is connected to addiction and reward, the *nucleus accumbens*.[14]

## SUGAR IS DISASTROUS FOR THE HEALTH OF YOUNG CHILDREN

24.    "Sugar contains calories and only calories; it provides no other nutrients – no protein, no vitamins, and no minerals." [15]

25.    Refined sugars (e.g., sucrose, fructose) were largely absent from the human diet until very recently. "In 1822, the average American ate in 5 days the amount of sugar found in one of today's 12-ounce sodas. Now, we eat that much [sugar] every 7 hours."[16]

26.    "The average American eats (or drinks) 34 teaspoons of sugar per day, which is equal to 500+ calories. This averages more than 100 pounds of sugars per person each year."[17]

27.    This is particularly devastating for U.S. children.  Dramatic new research shows

---

[12] Michael I. Goran, PhD, Sugarproof 2020 at 89.
[13] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1931610/
[14] Michael I. Goran, PhD, Sugarproof 2020 at 89; https://www.washingtonpost.com/news/answer-sheet/wp/2013/10/18/rats-find-oreos-as-addictive-as-cocaine-an-unusual-college-research-project/

[15] https://www.ars.usda.gov/plains-area/gfnd/gfhnrc/docs/news-articles/2012/the-question-of-sugar/

[16] *Id.*

[17] *Id.*

CLASS ACTION COMPLAINT

that their developing bodies are uniquely vulnerable to the effects of too much sugar.  In fact, sugar can disrupt the normal growth of the heart, brain, liver, kidneys, gut and more.[18]

28.    "Cavities are the most common chronic childhood disease and can cause undue pain, as well as issues with speaking, eating, playing and learning. Over time, in addition to dental health concerns, a diet with excess added sugars puts kids at higher risk of cardiovascular disease, and obesity, among other health concerns."[19]

29.    In a scientific statement published in Circulation, the American Heart Association (AHA) recommends that children ages two to eighteen should limit their added sugar consumption to less than six teaspoons (25 grams) per day, and sugary beverages should be limited to no more than eight ounces per week. According to the AHA statement, children under the age of two should not consume any foods or beverages with added sugars.[20]

30.    There is "clear evidence" that added sugars "contribute to obesity and other metabolic problems," says Dr. Frank Hu, Professor of Nutrition and Epidemiology at the Harvard Chan School of Public Health."[21]"

31.    High sugar consumption also contributes to children's moods and mental health, including depression.  Studies have found connections between national levels of sugar consumption and nation prevalence of disorders in anxiety, mood, impulse control, substance abuse and even schizophrenia.[22]

32.    Sugar consumption can also profoundly negatively impact the academic

---

[18] Michael I. Goran, PhD, Sugarproof 2020
[19] https://www.ada.org/en/about/press-releases/let-them-eat-cake-study-reveals-grandparents-spoil-grandchildren#:~:text=According%20to%20the%20American%20Dental,the%20risk%20for%20tooth%20decay.
[20] https://www.hsph.harvard.edu/nutritionsource/2016/08/23/aha-added-sugar-limits-children/#:~:text=The%20American%20Heart%20Association%20recommends,of%20added%20sugar%20per%20day.
[21] https://www.hsph.harvard.edu/nutritionsource/2016/08/23/aha-added-sugar-limits-children/#:~:text=The%20American%20Heart%20Association%20recommends,of%20added%20sugar%20per%20day.
[22] Michael I. Goran, PhD, Sugarproof 2020 at 80.

CLASS ACTION COMPLAINT

performance, learning ability, and memory of children.[23]

33.    In one of the largest and most comprehensive studies on the effects of too much sugar on academic performance, Austrian researchers looked at the diets of 4,245 children ages eight to fifteen years, along with their scores on standardized multiple choice academic tests.  The study found that regular consumption of sugary beverages was associated with lower test scores in grammar, reading, writing and math.  As the kids consumed an increasing number of sugary beverages, their test scores got progressively worse in all four subjects.  In contrast, eating vegetables at the evening meal was associated with better test scores in reading and writing.[24]

34.    Other studies have shown that kids tend to have poorer academic performance when they have habits like eating junk food that is high in sugar, skipping breakfast, or having a sweet breakfast with processed carbohydrates and sugars, which quickly raise blood sugar.[25]

**A.    THE CHUBBY SANDWICHES CONTAIN MULTIPLES MORE SUGAR THAN IS REPRESENTED ON THE PRODUCT'S LABEL**

35.    Launched in June of 2020, Defendant dubs the Products a "better way to PB&J."

36.    During the Class Period, Chubby produced the following Products:

- Peanut Butter and Hazelnut Cocoa, Limited Edition

- Peanut Butter and Grape Jam (with a represented sugar content of 3 grams per serving);

- Almond Butter and Grape Jam (with a represented sugar content of 3 grams per serving);

- Almond Butter and Strawberry Jam (with a represented sugar content of 2 grams per serving);

- Peanut Butter & Strawberry Jam (with a represented sugar content of 3 grams

---

[23] https://keck.usc.edu/news/you-know-sugar-is-bad-for-your-kids-heres-what-you-can-do/#:~:text=It%20goes%20well%20beyond%20the,academic%20performance%2C%20learning%20and%20memory.
[24] Michael I. Goran, PhD, Sugarproof 2020 at 97.
[25] Michael I. Goran, PhD, Sugarproof 2020 at 97.

CLASS ACTION COMPLAINT

per serving);

- Sunflower Butter & Grape Jam (with a represented sugar content of 3 grams per serving)

- Sunflower Butter & Strawberry Jam (with a represented sugar content of 2 grams per serving)

37.     During the Class Period, the nutrition panels of Chubby Products claim that the Products contain between two and three grams of sugar per Product. That information appears on the Products' label, and all consumers are exposed to the same message.

38.     Independent third-party laboratory testing has confirmed that the sugar content listed on the nutritional labels for each of the Products are egregiously inaccurate, misleading, and underreported. The results of this industry standard testing performed on the Products from the Class Period demonstrated that each of the Products actually contain between five grams and nearly eight grams of sugars per serving, which, on average, translates to approximately two times (2x) more sugar than is stated on the Products' label.

39.     Said differently, each serving of Chubby has roughly the same as or *more* grams of sugar than:



a Oreo cookie (**the cookie has less sugar)**



three-four Gummy Bears



One Ring Pop

## **THE CHUBBY'S SANDWICHES ARE DECEPTIVELY LABELED**

40.     Many American consumers are health conscious and look for wholesome, low-sugar foods to keep a healthy diet.

41.     This is particularly true for parents looking to provide their children with nutritious and healthy food products.

42.     Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

43.     The sugar content is material to a reasonable consumer and is particularly material to the health-conscious consumers to whom Defendant markets the Chubby Products, including but not limited to Chubby's stated target of "health-conscious shopping moms." [26]

44.     Moreover, the Products' nutritional and health misrepresentations can have dire effects on the health and wellness of consumers who have health-related concerns such as diabetes, arthritis, and other conditions that are complicated by increased sugar intake.

45.     Chubby's has, since its inception, marketed itself as a healthy alternative for children.  The company uses child-friendly imagery, cartoons and designs to appeal to children and their families.

---

[26] https://www.forbes.com/sites/douglasyu/2022/09/26/threatened-by-smucker-and-facility-closure-chubby-snacks-amasses-325-million-to-launch-superfood-peanut-butter-and-jelly-sandwich-nationwide/?sh=322a92e84614

CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

46.     As Ceglio explained, "[s]imply put, we just wanted to be loud and memorable and ultimately be able to win a consumer based on what we were putting in the product. The idea is you walk down the aisle, you see our branding and see our name, and it stops you in your tracks, and you question, 'What is that?' You can have fun with the brand, but then you flip the package over and realize, 'Wow, this is a great product. I'm either going to eat it or feed this to my kids.'"[27]

47.     Throughout the Class Period, in addition to its integrated deceptive "healthy" and "low sugar" marketing campaign, the nutritional panel on the back of the Products has misrepresented the sugar content of the product.

48.     Instead, throughout the Class Period the nutrition panel grossly undervalues the amount of sugar that is actually in these products.



---

[27] https://www.bakingbusiness.com/articles/56482-chubby-snacks-to-take-on-uncrustables

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      49.     As shown above, during the Class Period, while the Product packaging represents

17   that the peanut butter and grape Product contains 3 g of sugar, independent third-party testing of

18   the product revealed that the actual sugar content measures up to 6.53g for that Product.

19   Similarly, while the packaging of the peanut butter and strawberry product represents that the

20   Product contains 2 g of sugar, industry standard testing has revealed the actual content to be far

21   exceeds this amount at 5.3g per sandwich.

22      50.     Defendant's consumers lack the meaningful ability to test or independently

23   ascertain the truthfulness of food and snack labeling claims, especially prior to or at the point of

24   sale. Consumers would not know the true nature and quantity of the ingredients merely by

25   reviewing Defendant's advertisements and Product packaging or merely by reading the ingredient

26   label. To learn the truth about the much higher-than-advertised sugar content in the Products

27   requires investigation beyond the grocery store—namely sophisticated testing and knowledge of

28

food chemistry as well as internal manufacturing habits beyond that of the average consumer. Thus, reasonable consumers must, and do, rely on food companies such as Defendant to honestly report the nature and quantity of the Products' ingredients, and food companies such as Defendant intend and know that consumers rely upon food labeling statements in making their purchasing decisions. Such reliance by consumers is also eminently reasonable, since food companies, like Defendant, are prohibited from making false or misleading statements on their products under federal law.

51.    Defendant's systematic mislabeling of the sugar content of Chubby Products is deceptive, fraudulent, unfair in violation of California's consumer laws.

52.    During the Class Period, Plaintiff was introduced to the Products through Defendant's labeling and advertising. Plaintiff, like other reasonable consumers, cares about her sugar intake and would not have purchased the Chubby Products at all and/or would not have paid a premium price for the Products as compared to competitors' products had Plaintiff known the Products contained more sugar than what was represented in Defendant's advertising and labeling or than what was disclosed on the nutritional panel during the Class Period.

53.    Defendant unscrupulously capitalized on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing the Products.

## DAMAGES TO PLAINTIFF AND THE CLASSES

54.    Plaintiff purchased the Products based on Defendant's labeling, advertising, and marketing, including but not limited to the Products' purported "strong macros" due to "low-sugar" content and that the Products had a significantly superior low-sugar nutritional profile when compared with Chubby's competitors' products.

55.    Defendant manufactured, distributed, and sold Products that are misbranded. Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law. The Products have no value because they should have never been introduced into the stream of commerce by Defendant in the first place.

56.    Moreover, Plaintiff and the members of the Classes would not have purchased

and/or paid a premium to purchase the Products over comparable products but for Defendant's misrepresentations about the sugar content in the Products.

57.    As set forth in the chart below, the Products cost more than comparable products that contain comparable high sugar levels.

| Product | Price per Sandwich | Premium paid per Sandwich versus … |
|---|---|---|
| Chubby | $3.75 | |
| Smucker's Uncrustables Reduced Sugar | $1.12 | $2.63 |
| Market Pantry Crustless Sandwiches | $1.07 | $2.68 |

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

58.    Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein regarding the false and deceptive nature of the higher than advertised sugar levels in Defendant's Products until immediately prior to commencing this civil action.

59.    Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

60.    Because of the self-concealing nature of Defendant's actions and its affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

61.    Defendant continues to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis when they purchase Defendant's premium priced Products as a result of Defendant's unlawful conduct. Therefore, Plaintiff and the Classes submit that each instance that Defendant engaged in the conduct complained of herein and each instance

that a member of any Class purchased the Products constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

62.     Defendant is estopped from relying on any statute of limitations defense because of its unfair or deceptive conduct.

63.     Defendant's conduct was and is, by its nature, self-concealing. Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding its illegal conduct, and actively have foreclosed Plaintiff and the Classes from learning of its illegal, unfair, and/or deceptive acts. These affirmative acts include mislabeling the Products by significantly undervaluing the Products' sugar content and by misleading its customers through false and deceptive advertising regarding the Products' sugar content.

64.     By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

65.     Plaintiff brings this action individually and on behalf of all other persons similarly situated. The Classes which Plaintiff seek to represent comprise:

**California Class**
All persons in California who purchased Chubby Snacks Products for personal or household use, and not for resale or distribution, from the date of the Products' introduction into the market until either: (1) the date that the Products were reformulated and/or the Products' labeling, packaging, and advertising were updated to convey the higher level of sugars actually contained in the Products; or (2) the date of judgment in this action (whichever is first). Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant ("California Class"). Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

**National Class**
All persons in the United States who purchased Chubby Snacks Products for personal or household use, and not for resale or

distribution, from the date of the Products' introduction into the market until either: (1) the date that the Products were reformulated and/or the Products' labeling, packaging, and advertising were updated to convey the higher level of sugars actually contained in the Products; or (2) the date of judgment in this action (whichever is first). Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant ("National Class"). Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

**Consumer Protection Class**

All persons who reside in states in the United States with similar consumer protection laws, breach of express warranty laws and breach of implied warranty law, who purchased Chubby Snacks Products for personal or household use, and not for resale or distribution purposes, from the date of the Products' introduction into the market until either: (1) the date that the Products were reformulated and/or the Products' labeling, packaging, and advertising were updated to convey the higher level of sugars actually contained in the Products; or (2) the date of judgment in this action (whichever is first).  Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant ("Consumer Protection Class"). Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

66.     The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product. Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1). The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court. The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

67.     There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), whether Defendant's labels and packaging include uniform misrepresentations and omissions that rendered the Products misbranded and that misled Plaintiff and the other members

of the Classes to believe the Products were healthier and contained less sugar than was the case during the Class Period. The members of each Class were and are similarly affected by having purchased the Products for their intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

68.     Plaintiff asserts claims that are typical of the claims of each respective Classes for purposes of Rule 23(a)(3). Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased the Products, which contains vastly more grams of sugar than represented on the Products' labels. Plaintiff paid a premium for the Products, based on Defendant's misrepresentations and omissions which led Plaintiff to reasonably believe the Products contained between two and three grams of sugar per serving, over similar alternatives that did not make such representations. Plaintiff and the members of each Class have thus all overpaid for the Products.

69.     Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4). Plaintiff has no interests antagonistic to those of other members of each respective Class. Plaintiff are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

70.     Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole. Defendant has utilized an integrated, nationwide messaging campaign that includes uniform misrepresentations that misled Plaintiff and the other members of each Class about the sugar content in the Products.

71.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual

members of each Class. Among these common questions of law and fact are:

    a.  whether the Products are misbranded foods, prohibited from introduction or delivery for introduction into interstate commerce because the sugar content in the Products impermissibly exceeds the amount of sugar declared on the Products' respective nutrition labels during the Class Period;

    b.  whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Products;

    c.  whether Defendant's Product labeling likely deceived the members of each Class;

    d.  whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

    e.  whether Defendant represented that the Products have characteristics, benefits, uses, or qualities that they do not have;

    f.  whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of Chubby Products violated the laws alleged herein;

    g.  whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief; and

    h.  whether Defendant was unjustly enriched by its conduct.

72. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

73. The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendant's misconduct.

74. Plaintiff and the members of each Class have been damaged by Defendant's misconduct. The members of each Class have paid for Products that they would not have been purchased in the absence of Defendant's deceptive scheme, or, alternatively, that they would have

purchased at a lesser price.

75.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct. Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned. Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

## FIRST CAUSE OF ACTION

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ*.**

**(BY PLAINTIFF AND CALIFORNIA CLASS AGAINST ALL DEFENDANT)**

76.    Plaintiff repeat and reallege the allegations set forth above, and incorporate the same as if set forth herein at length.

77.    This cause of action is brought pursuant to *Business and Professions Code* § 17200, *et seq*.

78.    In the advertising of the Products during the Class Period, Defendant makes false and misleading statements. Specifically, as set forth above, Defendant labels its Chubby Products as having between two and three grams of sugar per seventy-five gram serving.

79.    In fact, the Products contain a far greater sugar content per serving.

80.     Defendant is aware that the claims that it makes about the Products during the Class Period are false, misleading and unsubstantiated.

81.     As alleged in the preceding paragraphs, the misrepresentations and omissions by Defendant of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

82.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

83.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

84.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

85.     Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Products. Likewise, Plaintiff and the members of the Classes seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

///

///

///

///

///

**SECOND CAUSE OF ACTION**

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS &**

**PROFESSIONS CODE § 17500, *et seq*.**

**(By Plaintiff and California Class against all Defendant)**

86. Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

87. This cause of action is brought pursuant to *Business and Professions Code* § 17500, *et seq.* (known as California's False Advertising Law or "FAL").

88. The FAL prohibits the dissemination of any advertisement which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to by untrue or misleading. Cal. Bus. & Prof. Code §17500.

89. In its advertising of Products during the Class Period, Defendant makes false and misleading statements. Specifically, as set forth above, Defendant labels its Products during the Class Period as having a sugar content of between two and three grams of sugar per serving.

90. In fact, the Products contain between at least double that amount.

91. As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

92. In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

93. Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Products. Likewise, Plaintiff and the members of the Classes seek an order requiring Defendant to disclose such

misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.*

### (By Plaintiff and California Class against all Defendant)

94.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

95.     This cause of action is brought pursuant to *Civil Code* § 1750, *et seq.*, the Consumers Legal Remedies Act.

96.     Plaintiff, as well as each member of the Consumer Class, constitutes a "consumer" within the meaning of California *Civil Code* § 1761(d).

97.     Defendant's sales of Chubby Products constitutes "transactions" within the meaning of California *Civil Code* § 1761(e).

98.     The Products purchased by Plaintiff and the Consumer Class constitute "goods" under California *Civil Code* § 1761(a).

99.     The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

100.     There are questions of law and fact common to the classes, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

(a) Whether Defendant represented that the Products have characteristics, ingredients, benefits, uses or quantities which they do not have during the Class Period;

(b) Whether the existence, extent and significance of the major misrepresentations, concealments and omissions regarding the purported benefits, characteristics and efficacy of the Products violate the Act; and

(c) Whether Defendant knew of the existence of these misrepresentations, concealments and omissions.

101.    The policies, acts, and practices heretofore described were intended to result in the sale of the Products to the consuming public and violated and continue to violate: (1) Section 1770(a)(5) of the Act which prohibits, *inter alia,* "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" (2) Section 1770(a)(7) of the Act, which prohibits, "[r]epresenting that goods or services are of a particular standard, quality, grade, or that goods are of a particular style or model , if they are of another;" (3) Section 1770(a)(9), which prohibits, '[a]dvertising goods or services with intent not to sell them as advertised;" and section 1770(a)(14) which bars Defendant from "representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve."

102.    Defendant fraudulently deceived Plaintiff and the Classes by representing that the Products have certain characteristics, benefits, uses and qualities which they do not have. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Classes, specifically and not limited to the Products' sugar content. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Classes and depriving them of their legal rights and money.

103.    Defendant's actions as described above were done with conscious disregard of Plaintiff's rights and Defendant was wanton and malicious in its concealment of the same.

104.    Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant including, but not limited to, an order enjoining Defendant from distributing such false advertising and misrepresentations regarding the amount of sugar contained in the Products. Plaintiff continues to see the Products' advertisements and encounter the Products for sale in stores, and would consider buying the Products again if they could trust that the Products were not misbranded and were labeled correctly. Plaintiff shall be irreparably harmed if such an order is not granted.

105.    Plaintiff reserves the right to amend this complaint to include a request for damages under the CLRA after complying with *Civil Code* 1782(a) within thirty days after the commencement of this action.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(By Plaintiff, California Class and National Class**

**Against all Defendant)**

106.    Plaintiff repeats and realllege the allegations set forth above and incorporate the same as if set forth herein at length.

107.    Plaintiff brings this claim individually, as well as, on behalf of members of the National Class and California Class pursuant California law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff, and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

108.    In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

109.    At all times during the Class Period, Defendant deceptively labeled, marketed, advertised, and sold the Products to Plaintiff and the Classes.

110.    Plaintiff and members of the Classes conferred upon Defendant non-gratuitous payments for Products that they would not have due to Defendant's deceptive labeling, advertising, and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

111.    Defendant has been unjustly enriched in retaining the revenues derived from

purchases of the Products by Plaintiff and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented the quantity of sugar in the Products, which caused injuries to Plaintiff and members of the Classes because they paid a price premium due to the mislabeling of the Products.

112.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**<u>FIFTH CAUSE OF ACTION</u>**

**BREACH OF EXPRESS WARRANTY**

**(By Plaintiff, on behalf of herself, the California Class and**

**Consumer Protection Class Against all Defendant)**

113.    Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

114.    Plaintiff brings this Count individually under the laws of the state where they purchased the Products and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding express warranties).

115.    Defendant's representations during the Class Period, as described herein, are affirmations by Defendant that the Products contained only between two and three grams of sugar per serving. Defendant's representations regarding the Products are made to Plaintiff and the other members of the Classes prior to and at the point of purchase and are part of the description of the goods. Those promises constituted express warranties and became part of the basis of the bargain, between Defendant on the one hand, and Plaintiff and the Classes on the other.

116.    In addition, or in the alternative, Defendant made each of its above-described representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendant's representations as a material factor in its decisions to purchase the Products. Plaintiff and other members of the Classes would not have purchased the Products but for these representations and warranties.

117.     The Products did not, in fact, meet the representations Defendant made about the Products throughout the Class Period, as described herein, because the Products contains sugar contents far in excess of the amount Defendant warranted.

118.     At all times relevant to this action, Defendant made false representations in breach of the express warranties and in violation of state express warranty laws, including:

a.  Alaska St. §45.02.313;

b.  Ariz. Rev. Stat. Ann. §47-2313;

c.  Ark. Code Ann. §4-2-313;

d.  Cal. Com. Code §2313;

e.  Colo. Rev. Stat. §4-2-313;

f.  Conn. Gen. Stat. Ann. §42a-2-313;

g.  D.C. Code §28:2-313;

h.  Fla. Stat. §672.313;

i.  Haw. Rev. Stat. §490:2-313;

j.  810 Ill. Comp. Stat. 5/2-313;

k.  Ind. Code §26-1-2-313;

l.  Kan. Stat. Ann. §84-2-313;

m.  La. Civ. Code. Ann. art. 2520;

n.  Maine Rev. Stat. Ann. 11 §2-313;

o.  Mass. Gen. Laws Ann. 106 §2-313;

p.  Minn. Stat. Ann. §336.2-313;

q.  Miss. Code Ann. §75-2-313;

r.  Mo. Rev. Stat. §400.2-313;

s.  Mont. Code Ann. §30-2-313;

t.  Neb. Rev. Stat. §2-313;

u.  Nev. Rev. Stat. §104.2313;

v.  N.H. Rev. Stat. Ann. §382-A:2-313;

w.  N.J. Stat. Ann. §12A:2-313;

1        x.   N.M. Stat. Ann. §55-2-313;

2        y.   N.Y. U.C.C. Law §2-313;

3        z.   N.C. Gen. Stat. Ann. §25-2-313;

4        aa. Okla. Stat. Ann. tit. 12A, §2-313;

5        bb. Or. Rev. Stat. §72.3130;

6        cc. Pa. Stat. Ann. tit. 13, §2313;

7        dd. R.I. Gen. Laws §6A-2-313;

8        ee. S.C. Code Ann. §36-2-313;

9        ff.  S.D. Codified Laws. §57A-2-313;

10       gg. Tenn. Code Ann. §47-2-313;

11       hh. Tex. Bus. & Com. Code Ann. §2.313;

12       ii.  Utah Code Ann. §70A-2-313;

13       jj.  Vt. Stat. Ann. tit. 9A§2-313;

14       kk. Wash. Rev. Code §62A.2-313;

15       ll.  W. Va. Code §46-2-313;

16       mm.     Wyo. Stat. Ann. §34.1-2-313;

17      119.   The above statutes do not require privity of contract in order to recover for breach
18 of express warranty.

19      120.   As a proximate result of this breach of warranty by Defendant, Plaintiff and other
20 members of the Classes have been damaged in an amount to be determined at trial because: (a)
21 they paid a price premium due to the deceptive labeling of the Products; and (b) the Products did
22 not have the composition, attributes, characteristics, nutritional value, health qualities, or value
23 promised.

24      121.   Wherefore, Plaintiff and the Classes demand judgment against Defendant for
25 compensatory damages, plus interest, costs, and such additional relief as the Court may deem
26 appropriate or to which Plaintiff and the Classes may be entitled.

27 ///

28 ///

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

**(By Plaintiff, on Behalf of Herself, the California Class, the California Class and**

**Consumer Protection Class Against Defendant)**

122.    Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

123.    Plaintiff brings this Count individually under the laws of the state where they purchased the Products and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding implied warranties).

124.    The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

125.    The Uniform Commercial Code §2-314 provides that "[g]oods to be merchantable must be at least such as…. Are adequately contained, packaged, and labeled as the agreement may require…[and] conform to the promises or affirmations of fact made on the container or label if any." Cal.Com.Code § 2314(2)(f).

126.    Defendant developed, manufactured, advertised, marketed, sold, and/or distributed the Products and represented that the Products had a sugar content below the actual sugar content of the Products.

127.    At all times, the following listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

1. Ala. Code §7-2-314;

2. Alaska Stat. §45.02.314;

3. Ariz. Rev. Stat. Ann. §47-2314;

4. Ark. Code Ann. §4-2-314;

5. Cal. Com. Code §2314;

6. Colo. Rev. Stat. §4-2-314;

7. Conn. Gen. Stat. Ann. §42a-2-314;

8. Del. Code Ann. tit. 6 §2-314;

9. D.C. Code §28:2-314;

10. Fla. Stat. §672.314;

11. Ga. Code Ann. §11-2-314;

12. Haw. Rev. Stat. §490:2-314;

13. Idaho Code §28-2-314;

14. 810 Ill. Comp. Stat. Ann. 5/2-314;

15. Ind. Code Ann. §26-1-2-314;

16. Iowa Code Ann. §554.2314;

17. Kan. Stat. Ann. §84-2-314;

18. Ky. Rev. Stat. Ann. §355.2-314;

19. La. Civ. Code Ann. art. §2520;

20. Me. Rev. Stat. Ann. 11 §2-314;

21. Md. Code Ann. Com. Law §2-314;

22. Mass. Gen. Laws Ch. 106 §2-314;

23. Mich. Comp. Laws Ann. §440.2314;

24. Minn. Stat. Ann. §336.2-314;

25. Miss. Code Ann. §75-2-314;

26. Mo. Rev. Stat. §400.2-314;

27. Mont. Code Ann. §30-2-314;

28. Nev. Rev. Stat. §104.2314;

29. N.H. Rev. Stat. Ann. §382-A:2-314;

30. N.J. Stat. Ann. §12A:2-314;

31. N.M. Stat. Ann. §55-2-314;

32. N.Y. U.C.C. Law §2-314;

CLASS ACTION COMPLAINT

1       33. N.C. Gen. Stat. Ann. §25-2-314;

2       34. N.D. Cent. Code §41-02-314;

3       35. Ohio Rev. Code Ann. §1302.27;

4       36. Okla. Stat. Ann. tit. 12A §2-314;

5       37. Or. Rev. Stat. §72.3140;

6       38. Pa. Stat. Ann. tit. 13 §2314;

7       39. R.I. Gen. Laws §6A-2-314;

8       40. S.C. Code Ann. §36-2-314;

9       41. S.D. Codified Laws §57A-2-314;

10       42. Tenn. Code Ann. §47-2-314;

11       43. Tex. Bus. & Com. Code Ann. §2-314;

12       44. Utah Code Ann. §70A-2-314;

13       45. Va. Code Ann. §8.2-314;

14       46. Vt. Stat. Ann. tit. 9A §2-314;

15       47. W. Va. Code §46-2-314;

16       48. Wash. Rev. Code §62A 2-314;

17       49. Wis. Stat. Ann. §402.314; and

18       50. Wyo. Stat. Ann. §34.1-2-314.

19       128.    As developer, manufacturer, producer, advertiser, marketer, seller and/or

20 distributor of the Products, Defendant is a "merchant" within the meaning of the various states'

21 commercial codes governing the implied warranty of merchantability.

22       129.    Further, Defendant is a merchant with respect to the Products. Defendant

23 developed, manufactured, produced, advertised, marketed, sold, and/or distributed the Products

24 and represented to Plaintiff and the Classes that the snacks had between two and three grams of

25 sugar per serving, as described herein. Further, Defendant, by selling the Products to Plaintiff and

26 the Classes, have held herself out as retailers of the Products and, in fact, have derived a

27 substantial amount of revenues from the sale of the Products.

28       130.    The Products can be classified as "goods," as defined in the various states'

commercial codes governing the implied warranty of merchantability.

131. As a merchant of the Products, Defendant knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute the Products as promised.

132. Defendant developed, manufactured, produced, sold, and distributed the Products to consumers such as Plaintiff and the Classes. They knew that the Products would be used as a snack, as promised.

133. Throughout the Class Period, Defendant specifically represented in its labeling of the Products that the Products contained between two and three grams of sugar per serving.

134. Defendant breached its implied warranties in connection with the sale of the Products to Plaintiff and members of the Classes. The Products are neither adequately labeled nor conform to the promises or affirmations of at made on the container or label.

135. Defendant had actual knowledge that the Products contained sugar levels far in excess of its warranties and thus was the low sugar snack marketed and not fit for its ordinary purpose and Plaintiff therefore were not required to notify Defendant of its breach. If notice is required, Plaintiff and the Classes adequately have provided Defendant of such notice through the filing of this lawsuit.

136. Defendant contracted with retailers so that the retailers could sell its Products to consumers. Defendant intended that consumers would be the end users of the Products and that consumers would be the beneficiaries of its contracts with retailers to sell the Products to consumers.

137. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and other members of the Classes have been injured. Plaintiff and the other members of the Classes would not have purchased the Products but for Defendant's representations and warranties. Plaintiff and the other members of the Classes were injured when  they purchased Products which were valueless because they were misbranded and never should have been injected by Defendant into the marketplace for purchase by consumers. Moreover, Defendant's misrepresentation of the character of the Products caused injuries to Plaintiff and the other members of the Classes because they paid a price premium for the Products as compared to

competitors' similar snack products due to Defendant's deceptive labeling. Plaintiff

**SEVENTH CAUSE OF ACTION**

**VIOLATIONS OF CONSUMER FRAUD LAWS**

**(By Plaintiff, on Behalf of Herself, the California Class, and Consumer Protection Class against Defendant)**

138.    Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

139.    Plaintiff brings this Count individually under the laws of the state where they purchased the Products and on behalf of all other persons who purchased the Products in states having similar laws regarding consumer fraud and deceptive trade practices.

140.    Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased the Products.

141.    The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Products declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

142.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. These statutes are found at:

    a.    Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

    b.    Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

    c.    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

    d.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

    e.    Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

    f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.  Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.  Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.  California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.  Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.  Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.  Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.  Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.  Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the

Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.  North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.  Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.  Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.  South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.  Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

mm.    Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn.  West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

143.   The Products constitutes a product to which these consumer protection laws apply.

144.   In the conduct of trade or commerce regarding its production, marketing, and sale of the Products during the Class Period, Defendant engaged in one or more unfair or deceptive acts or practices including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of its packaging and labeling of the Products that the snacks contained between two and three grams of sugar when, in fact they contained between at least double the

numbers advertised, as described herein.

145.   Defendant's representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

146.   Defendant knew, or should have known, that its representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

147.   Defendant used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

148.   Plaintiff and the other members of the Classes did so rely.

149.   Plaintiff and the other members of the Classes purchased the Products produced by Defendant which misrepresented the characteristics and nature of the Products.

150.   Plaintiff and the other members of the Classes would not have purchased the Products but for Defendant's deceptive and unlawful acts.

151.   As a result of Defendant's conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

152.   Defendant's conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(By Plaintiff, on Behalf of Herself, and the California Class against all Defendant)**

153.   Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

154.   In making representations of fact to Plaintiff and the California Class members about the Products throughout the Class Period, Defendant failed to fulfill its duty to disclose the material facts alleged above. Such failure to disclose on the part of Defendant amounts to negligent misrepresentation.

155.   Plaintiff and the other members of the California Class reasonably relied upon

such representations and omissions to their detriment.

156.   Plaintiff and the other members of the California Class, as a direct and proximate cause of Defendant's negligent misrepresentations, reasonably relied upon such misrepresentations to their detriment. By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment and relief against Defendant as follows (cause of action number three is excluded from the below to the extent the remedy includes monetary damages):

A.   That the Court certify the California Class, the Nationwide Class, and the Consumer Protection Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representatives and their attorneys as Class Counsel to represent the members of the Classes;

B.   That the Court declares that Defendant's conduct violates the statutes referenced herein;

C.   That the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

D.   That the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits, and quality Defendant has claimed;

E.   That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint (excluded from this request is cause of action number three to the extent the remedy includes monetary damages);

F.   That the Court order Defendant to notify each and every individual and/or business

who purchased the Products of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant (excluded from this request is cause of action number three);

G.      That the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon (excluded from this request is cause of action number three);

H.      That the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint (excluded from this request is cause of action number three);

I.      That the Court award damages to Plaintiff and the Classes (excluded from this request is cause of action number three);

J.      The common fund doctrine, and/or any other appropriate legal theory (excluded from this request is cause of action number three); and

K.      that the Court grant such other and further relief as may be just and proper (excluded from this request is cause of action number three to the extent the remedy includes monetary damages).

DATED:  October 23, 2024          **BRADLEY/GROMBACHER, LLP**


By**:**  _/S/   *Kiley Lynn Grombacher*___
          Marcus J. Bradley, Esq.
          Kiley Lynn Grombacher, Esq.

          Attorneys for Plaintiff

///

///

///

CLASS ACTION COMPLAINT

1 | <u>**JURY DEMAND**</u>

2 |  Plaintiff demands a trial by jury on all causes of action so triable.

3

4 | DATED:  October 23, 2024 | **BRADLEY/GROMBACHER, LLP**

5

6 | By**:**  /S/  *Kiley Lynn Grombacher*
  |  Marcus J. Bradley, Esq.
7 |  Kiley Lynn Grombacher, Esq.

8 |  Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT